# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

In re:

Steven Brian Dollman,  
Darla Sue Dollman,  
         Debtors.

Case No. 13-13057

## SUR-REPLY re MOTION TO EXTEND TIME TO AMEND SCHEDULES UNDER RULE 9006(b)(1) and JUDICIAL ESTOPPEL

COME NOW Steven Brian Dollman and Darla Sue Dollman, Debtors in the above matter, by and through their attorney of record, the Law Offices of Deborah M. DeMack (Deborah M. DeMack), provide this sur-reply regarding their motion to extend time under Fed. R. Bankr. P. Rule 9006(b)(1) to allow Debtors to amend their bankruptcy schedules ("Motion to Extend") and to address further the issue of judicial estoppel. Mr. Dollman and Ms. Dollman state as follows:

### I.     BACKGROUND

On September 20, 2017, the Court issued its Memorandum Opinion regarding the Trustee's Amended Objections. *See* Doc. No. 94. Although the Court struck Debtors' amended schedules as filed without prejudice, it granted Debtors leave to file a motion to extend time to amend schedules under Rule 9006(b)(1). The Court declined to address the issue of judicial estoppel, however, it indicated that were it to grant Debtors' Motion to Extend, the Court would hear evidence on the issue at an evidentiary hearing set for November 29, 2017. Id.

In light of recent appellate court decisions concerning judicial estoppel, this Sur-Reply supplements Debtors' prior briefing of the issue as well as addresses the question previously raised by Debtors but not fully briefed regarding whether the legal claim at issue is property of the estate under 11 U.S.C. § 541.

1

## II. DISCUSSION

### A. Judicial Estoppel

Before considering whether the doctrine of judicial estoppel bars the Dollmans' claims, the Court must first resolve a threshold issue: whether the Dollmans sufficiently disclosed the potential personal injury claims to the Bankruptcy Court on their amended schedule(s) of personal property.

Various courts have noted that the Bankruptcy Code does not provide a standard for determining whether a debtor has sufficiently disclosed pending legal claims. The Tenth Circuit, for example, recently commented: "Although the duty of disclosure is clear, the statute does not address the degree of detail required." Hermann v. Hartford Cas. Insur. Co., 2017 WL 117118 at 3 (10th Cir. Jan. 12, 2017) *citing* Donarumo v. Furlong (*In re* Furlong), 660 F.3d 81, 87 (1st Cir. 2011); *In re* Mohring, 142 B.R. 389, 395 (Bankr. E.D. Cal. 1992) (noting there are "no bright-line rules for how much itemization and specificity is required"). Addressing whether a particular disclosure is sufficiently specific, courts have consistently held that "[t]he debtor must furnish enough information to put the trustee on notice of the wisdom of further inquiry." Id. (citations omitted).

Here, when the Dollmans filed a motion to reopen their Chapter 7 case on January 23, 2017 (Doc. 18) which the Court granted, they disclosed specific facts regarding the potential claim. As reflected in their motion as well as in the Dollmans' Amended Schedule B and Statement of Financial Affairs, the Debtors described the claim as a potential personal injury claim arising from an accident in a Wal-Mart Stores East, Ltd. ("Wal-Mart") parking lot, the date thereof, case number and further stated the reason for their motion to reopen. The Dollmans then exempted such personal injury claim under § 522(11)(D) and (E) on their amended Schedule C.

2

The descriptions provided were sufficient to disclose Debtors' claims for damages arising from or related to the parking lot accident. Thus the Dollmans provided sufficient information to put the Trustee on inquiry notice regarding any claims arising from or related to the accident. Id.

Nearly three months elapsed from the date the Court granted Debtors' motion to reopen their Chapter 7 bankruptcy to the date the Court held a preliminary hearing on the Trustee's Objections to the Debtors' claim of exemptions. During this period, however, the Trustee conducted no discovery and made no inquires of the Debtors.

After the hearing on April 17, 2017, the Court issued a Scheduling Order, (*see* Doc. 47), pursuant to which the Court granted the Trustee an additional three-and-a-half months' time to engage in discovery, presumably, to investigate or otherwise inquire into the personal injury claims against Wal-Mart, as well as the merits of the Debtors' exemptions. However, save for a Notice of Special 341 Meeting issued by the Trustee on July 26, 2017 (Doc. 67),[1] the Trustee failed to conduct any investigation or engage in discovery.

In addition, attorneys for Wal-Mart contacted the Trustee as early as February, 2017 regarding the parking lot incident and Ms. Dollman's medical records and information relating thereto in possession of the attorneys. Such contact put the Trustee on further inquiry notice. Thus the Trustee has had ample notice and opportunity to investigate.

    1.    <u>Slater v. U.S. Steel, 871 F.3d 1174 (11th Cir. 2017)</u>

At the August 16, 2017 hearing and status conference, the Court declined at that time to hear the issue of judicial estoppel. Presently, the issue pending before the Court is how the doctrine of judicial estoppel should be applied when a debtor fails to identify a potential civil claim as an asset in a bankruptcy proceeding. A recent decision by the 11th Circuit Court of

---

[1] Such Notice was later withdrawn by the Trustee after the Court ruled that the Trustee had no authority under the Bankruptcy Code to issue such Notice commanding the Debtors to appear. The Court issued its findings and rulings after the hearing on Debtors' Motion to Strike the Notice and status conference held on August 16, 2017.

3

Appeals addressed this very issue, and thus may provide guidance.

In <u>Slater v. U.S. Steel</u>, 871 F.3d 1174 (11th Cir. 2017), the Court revisited the application of the doctrine of judicial estoppel in cases where a bankruptcy debtor did not disclose a claim as an asset in the bankruptcy case. The Court's holding provides for a more flexible and open-ended approach in determining whether judicial estoppel should preclude a debtor's claim.

The 11th Circuit historically employed a two-part test to determine whether judicial estoppel may apply: (1) whether the party took a position under oath in the bankruptcy proceeding that was inconsistent with the plaintiff's pursuit of a civil action and (2) were these inconsistent positions calculated to manipulate the legal system. <u>Slater</u> at 1180-81 (citation omitted). The courts thus looked at both the debtor's actions as well as his intent and motive.

Expanding upon the second prong, the <u>Slater</u> Court held that a court's review should encompass all facts and circumstances when determining whether or not a debtor-plaintiff intended to "make a mockery" of the judicial system. <u>Id.</u> at 1185. In an *en banc* decision, the Court reversed itself, overruling not only its previous decision in <u>Slater v. U.S. Steel</u>, 820 F.3d 1193 (11th Cir. 2016), but it also portions of two prior 11th Circuit decisions which permitted the inference that a plaintiff intended to make a mockery of the judicial system simply because the debtor failed to disclose a civil claim. Explained the Court:

> Three reasons lead us to reject the inference we accepted in *Burnes* and *Barger* in favor of a rule that a district court should look to all the circumstances of the case. First, such an inquiry ensures that judicial estoppel is applied only when a party acted with a sufficiently culpable mental state. Second, it allows a district court to consider any proceedings that occurred in the bankruptcy court after the omission was discovered, arguably a better way to ensure that the integrity of the bankruptcy court is protected. Third, limiting judicial estoppel to those cases in which the facts and circumstances warrant it is more consistent with the equitable principles that undergird the doctrine.

<u>Id.</u> at 1185-86.

4

In rejecting the inference in favor of a new rule that courts should look to all the facts and circumstances of the case, the Court, explaining further, stated: "[o]ur decisions in *Burnes* and *Barger* conflated the question of whether the plaintiff's omission was inadvertent with the separate question of whether the plaintiff actually intended to manipulate the judicial system to his advantage." Id. at 1186.

<u>Slater</u> offers the following factors a court may consider in its review of a case when the debtor-plaintiff's inconsistent statement comes in the form of an omission in bankruptcy disclosures: (1) whether the debtor informed his or her bankruptcy attorney about the civil claims prior to filing for bankruptcy; (2) whether and under what circumstances a debtor's disclosures were corrected; (3) the debtor's level of sophistication; (4) whether the trustee or creditors were aware of any civil lawsuit or claims before the debtor-plaintiff amended the disclosures; (5) whether the debtor identified other lawsuits to which he or she was party; and (6) any findings or actions by the bankruptcy court after the omission was discovered. Id. at 1185. In effect, <u>Slater</u> stands for the proposition that the court should consider all factors and circumstances which may have led to the non-disclosure.

The <u>Slater</u> Court further observed that both the Bankruptcy Code and Rules liberally permit debtors to amend their disclosures when an omission is discovered. "Yes, the Bankruptcy Code requires debtors to disclose all their assets, including contingent and unliquidated claims ... But Bankruptcy Rule 1009, which was proposed by the Supreme Court and adopted by Congress, permits a debtor to amend a schedule or statement 'as a matter of course at any time before the case is closed.' Fed. R. Bankr. R. P. 1009(a)." Id. at 1186.

Further, given the broad discretion of the bankruptcy courts to reopen a closed case "to administer" an asset not previously been scheduled, the <u>Slater</u> Court noted: "[i]t strikes us as

5

inconsistent with these principles -- which recognize that omissions occur and liberally allow amendment and correction of disclosures -- to infer that a debtor who failed to disclose a lawsuit necessarily meant to manipulate the bankruptcy proceedings." Id. at 1187. The intent of judicial estoppel is not solely or even primarily to punish the debtor opined the Court. Rather, consideration of all facts and circumstances of the case is more consistent with the equitable principles which underlie the doctrine of judicial estoppel. Id.

    2.    <u>Applying *Slater* to the Instant Case</u>

Here, as the Dollmans stated in their affidavits, in April of 2013, the Dollmans first disclosed specific facts and information to their bankruptcy attorney, Mr. Joseph Yar, about the parking lot accident and what they then knew about Ms. Dollmans' injuries. *See* Affidavits of Steve Brian Dollman and Darla Sue Dollman dated March 6, 2017, attached as <u>Exhibits A</u> and <u>A-1</u> to Response to Trustee's Objections to Debtors' Exemptions Claims (Doc. 37); Motion to Extend Time to Amend Schedules under Rule 9006(b)(1) (Doc. 97). Mr. Yar, moreover, had further discussions with Ms. Dollman regarding her injuries prior to filing the Dollmans' bankruptcy schedules. Undeniably, the Dollmans disclosed what they then knew about any potential legal claims arising from or relating to the accident to their bankruptcy attorney prior to the filing of their Chapter 7 bankruptcy in September of 2013.

As discussed in other pleadings and below, whether through mistake or inadvertence or because Mr. Yar concluded that a cause of action had not accrued in fact or in law by the time of filing the Dollmans' Chapter 7 bankruptcy, the failure to list the potential personal injury claim in the Dollmans' bankruptcy schedules was not the result of the Dollmans failing to disclose information to their bankruptcy attorney. The Dollmans did not withhold or conceal information from Mr. Yar. Simply because this potential personal injury claim was not disclosed does not

6

equate to an attempt to manipulate court proceedings or the judicial system. As they have maintained throughout the course of these proceedings, the Dollmans have never had any intent to deceive or mislead the Court or their creditors.

The Dollmans first learned of the non-disclosure of the potential personal injury claim approximately a year ago. Shortly thereafter, the Dollmans sought out Mr. Yar, only to learn that he was no longer practicing bankruptcy law. Not long thereafter, the Dollmans retained the services of present counsel for the purpose of amending their schedules. A few weeks later, Debtors filed their motion to re-open their case (Doc. 18) and filed their amended schedules once their motion was granted. Thus the Dollmans acted quickly to correct their schedules.

The approach taken by the 11th Circuit in Slater is fair and balanced as it invites the courts to look to all the facts and circumstances of the case. In so doing, the 11th Circuit adopted the standard of other jurisdictions, to include the Sixth, Seventh and Ninth, in an effort to ensure that judicial estoppel bars only the claims of debtors who are clearly culpable or who have shown clear intent to defraud the Court.

The Dollmans believe that, given all facts and circumstances, to include that which may not yet be known to the Court,[2] weigh in favor of allowing them to amend their schedules. Thus, in keeping with the equitable principles which underlie the doctrine of judicial estoppel, the Dollmans pray the Court will allow them to proceed. Slater at 1187.

A final consideration for any court when weighing whether to apply judicial estoppel: if a lawsuit is precluded, it affects all parties to the bankruptcy estate: the trustee, the debtor(s), and the creditors. The estate is thus deprived of a potential asset, and the trustee is barred from prosecuting the claim for the estate. Amendment may thus accrue to the benefit of all.

---

[2] Because there is no Protective Order in place, the Dollmans have been restrained from disclosing certain personal and confidential information.

7

### B. Debtors' Interest in Personal Injury Claim Not Property of the Estate Under 11 U.S.C. § 541

The question arises whether under 11 U.S.C. § 541, a potential legal claim for personal injury not listed on Debtors' schedules and any proceeds therefrom (if any), is property of the estate. Although the Dollmans previously raised this issue, it has not been fully briefed. The Dollmans wish to present the issue to the Court for its consideration.

When the Dollmans filed their petition, the nature, scope and extent of Ms. Dollman's injuries were not known, nor fully revealed. No legal claim(s) were listed in the Dollmans' bankruptcy schedules and petition because no cause of action had accrued as of the date they filed their bankruptcy petition, on September 18, 2013.[3]

1. *Segal v. Rochelle*

Neither the Bankruptcy Code nor the legislative history of § 541(a) address how a court should determine whether a claim has sufficiently matured as of the commencement of a case so as to constitute an "interest of the debtor in property." Accordingly, many a court has relied on Segal v. Rochelle, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed. 2d 428 (1966) for guidance.

In Segal, the Supreme Court construed the term "property" under § 70a(5) of the Bankruptcy Act (predecessor to the Bankruptcy Code). The debtor in Segal had a claim in a loss-carryback tax refund which he expected to receive post-petition but which arose from losses incurred pre-petition. Finding that the expected refund was "*sufficiently* rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start," the Segal Court held that the tax refund should be regarded as "property" of the estate. Segal at 380 (emphasis added).

Nevertheless, cautioned the Court, though many courts had "most generously" construed

---

[3] Determining with certainty whether such potential legal claim was ripe would have necessitated expert evaluation, the cost of which would have required resources and monies Debtors did not have or could afford.

8

the term "property," "limitations do grow out of other purposes of the Act." Id. at 379. One such purpose "which is highly prominent and is relevant ... is to leave the bankrupt free after the date of his petition to accumulate new wealth." Id.

Following the analysis set forth in Segal, courts since have generally employed a three-part test when analyzing whether a claim is sufficiently developed as of the petition date to constitute "property of the estate" for purposes of § 541(a)(1):

> (1) determine the extent to which the claim is rooted in the prebankruptcy past; (2) determine the extent to which it is entangled with the debtor's ability to make an unencumbered fresh start; and then (3) with both considerations in the balance, determine whether, in view of the purposes of the Bankruptcy [Code] ... the claim is more properly categorized as prepetition property that should come into the estate or a post-petition asset that the Debtor should take free of the claims of prebankruptcy creditors.

Riccitelli v. Grasso (In re Riccitelli), 320 B. R. 483, 490-91 (Bankr. Ct. D. Mass. 2005).

Continuing, the Riccitelli Court observed that, just because a claim has prepetition roots will it necessarily be deemed property of the estate. Rather, "*Segal* requires not just *some* prepetition roots, however attenuated, but that the cause of action be '*sufficiently* rooted in the prebankrutpcy past.'" Riccitelli at 491 (emphasis in the original, citation omitted). Thus the Riccitelli Court underscored that all elements must be present at the date of filing.

2. Accrual of a Cause of Action and State Law

Relying on Butner v. United States, 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed. 2d 136 (1979) ("Congress has generally left the determination of property rights in assets of a bankrupt's estate to state law"), courts have long been left to examine whether, under applicable state law, a cause of action has accrued as of the petition date. Under the "standard rule," a claim accrues "when the plaintiff has a complete and present cause of action." Wallace v. Kato, 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed. 2d 973 (2007).

9

Following the analysis set forth above, if any element of a cause of action accrues post-petition, then the cause of action is not property of the estate even if all of the *conduct* giving rise to a cause of action occurs pre-petition. Accordingly, a personal injury claim is not property of the estate if the injury(ies) -- a requisite element of a personal injury cause of action -- manifests itself only after the commencement of the bankruptcy case. *See* In re Ross, pp. 9, 12, Case 8-04-87445 (Reg) Memorandum Decision issued 4/14/16 (Doc. 40) (Bankr. Ct. C.D.N.Y) (finding that under Segal "property of the estate" does not include legal or equitable interests a debtor acquires post-petition if all elements necessary to commence an action under state law are not present as of the date of filing the petition).

In cases such as this involving potential tort claims, the proper focus is on whether there was a viable cause of action under state law on the date the Debtors filed their petition. Here, although the parking lot accident occurred pre-petition, that *conduct* alone does not establish that the cause of action has accrued. Rather, if the injury(ies) incurred by Ms. Dollman became manifest only after the commencement of the bankruptcy case, then the personal injury claim is not property of the estate. Id.

Twenty-seven months passed between the time the Dollmans filed their Chapter 7 bankruptcy and the filing of Ms. Dollman's personal injury lawsuit. Such delay strongly suggests that the personal injury claim(s) had not ripened in fact or in law as of the petition date. One cannot presuppose, as does the Trustee, that a cause of action "must have" existed at the time of filing simply because the accident occurred pre-petition.

Ms. Dollman sustained injuries as a result of the parking lot accident which occurred in December 2012. However, a number of months passed before it was ascertained that Ms. Dollman had in fact sustained injury(ies), and that such injuries arose from the parking lot

10

accident. As a consequence, not all of the elements necessary to establish a cause of action existed at the time of filing.

If no cause of action had accrued or ripened by the time the Dollmans filed their bankruptcy schedules, it is irrelevant whether, post-petition, Ms. Dollman developed further or permanent injuries: the cause of action still would not property of the estate under § 541 as all elements must be present at the time of filing. Segal at 380; Riccitelli at 491.

3. Categorizing the Claim as a Post-Petition Asset of the Debtors Will Allow the Dollmans to Get an Unencumbered Fresh Start

As discussed above, one of the considerations weighed by the courts when analyzing whether a claim is sufficiently developed as of the petition date to be deemed "property of the estate" is the extent to which the pending legal claim is entangled with the debtor's ability to make an unencumbered fresh start. Riccitelli at 491.

At the time the Dollmans filed their bankruptcy petition in 2013, Ms. Dollman's sole source of income was Social Security disability benefits, and Social Security benefits remain her primary if not sole source of income.[4] However, such benefits do not suffice to cover even ordinary and necessary expenses such as medical expenses, food, clothing and transportation.

Ms. Dollman has a vested interest in the now-pending personal injury lawsuit, as does Mr. Dollman. Any proceeds from lawsuit would greatly assist the Dollmans in obtaining their "fresh start," allowing them to recoup, to some extent, post-petition medical expenses, lost wages, and possibly more. In balancing the equities, it may be that the claim is more properly categorized as a post-petition asset.[5]

Thus, as an alternative to being granted the opportunity to amend their schedules, the

---

[4] In 2013, Ms. Dollman received $892.70 per month. She currently receives approximately $932.00 per month.
[5] In the event the Court denies the Dollmans' Motion to Extend, Mr. and Ms. Dollman wish to preserve this issue for appeal. The Dollmans further wish to preserve the issue of the Court's denial of the Debtor's Motion for Reconsideration regarding the filing of a statement pursuant to Rule 2016(b). *See* Order issued 9/28/17 (Doc. 93).

11

Dollmans ask the Court to consider issuing an order deeming the personal injury claim is not property of the estate. Further, if the Court were to find that the personal injury claim is not property of the estate, judicial estoppel does not apply to the case at hand.

### C. The Trustee Has Shown No Evidence to Support His Allegations

Without offering any evidence whatsoever in support of his allegations, the Trustee wrongfully accuses the Dollmans of knowingly, deliberately and with the intent to deceive this Court of failing to list a potential personal injury claim[6] on their bankruptcy schedules in 2013. As the Slater Court made clear, the court should not infer that a plaintiff intended to defraud the court simply because of a failure to disclose a civil claim. Slater at 1185-86.

The Trustee conducted no discovery in this matter. He does not reference or provide any grounds or basis of facts in his pleadings, and fails to cite to any specific facts, except to reference the actual amended filings. The Trustee must show specific evidence -- clear and convincing evidence -- to support his objections to allowing the Dollmans to amend their schedules. "[A]n objection to the proposed amendment must be fact-intensive and through specific evidence." In re Monahan, 171 B.R. 710, 715 (Bankr. D.H. 1994).

### 1. The Trustee Wrongfully Accuses the Dollmans of Concealment

As stated in prior pleadings (*see, e.g.,* Debtors' Response to Trustee's [Trial Brief Objecting to Exemptions Claimed, Doc. 87), the Trustee continues to insinuate that the Dollmans attempted to conceal the existence of the potential personal injury claim, if not wrongfully accusing the couple of bad faith and concealment.

Although the issue of fraudulent concealment is not now before the Court,[7] the Trustee's

---

[6] It is worth noting that, unlike the debtor with the personal injury claim in the unpublished Tenth Circuit decision cited by the Trustee, the Dollmans had not filed a lawsuit. Twenty-seven more months would pass before Ms. Dollman filed suit against Walmart, in December of 2015.
[7] The Dollmans make no waiver, express or implied, (and reserve all rights) by way of discussion of fraudulent
12

allegations are groundless, and wholly unsupported.

Pursuant to Section 727(a)(2)(A),[8] the Trustee must show by clear and convincing evidence that the Dollmans acted with the intent to hinder, delay or defraud. *In re* Ritchie, 543 B.R. 311, 319 (2015), (*citing In re* Gordon, 526 B.R. 376, 388 (10th Cir. BAP 2015) (*citations omitted*)). The Dollmans maintain, as they have throughout the course of these proceedings, they did not hide or attempt to hide, any property or assets in an effort to deprive their creditors or mislead the Court. Mere conjectures by the Trustee does not equate to "actual intent to hinder, delay, or defraud creditors." Id. at 320 (*citing In re* Warren, 512 F.2d 1241, 1249 (10th Cir. 2008) (*citations omitted*)).

2. <u>The Trustee Wrongly Accuses Debtors of Giving False Testimony</u>

The Trustee further alleges that the Debtors gave false oath. Although §727(a)(4) concerns the denial of discharge, a far harsher remedy than denial of an exemption or amendment of a schedule, §727(a)(4) states that, unless "the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account," the court shall grant a discharge. To prevail under a §727(a)(4) objection, the movant must show:

> (1) that the [d]ebtor made a false statement under oath; (2) that the [d]ebtor knew that the statement was false; (3) that [the debtor] made the statement with fraudulent intent; and (4) that the statement was material.

Id. at 323 (*citations omitted*); see also Gepner v. Kidd (*In re* Kidd), 2015 WL 6437480 at * 9 (10th Cir. BAP 2015) (creditor must show that the debtor acted knowingly and fraudulently re. the misstatement or omission, and the misstatement or omission related to a material fact).

In his brief (*see* Doc. 81), the Trustee wrongly states that the burden of proof rests upon the Debtors to prove their innocence once accused. Without any evidence whatsoever to support

---

concealment and Section 727, and only do so to brief fully the Court as to why the Trustee's objections are improper and without merit.

[8] Although Section 727(a)(2) concerns exceptions to discharge, for which the Trustee has not argued, nevertheless, it appears that the Trustee raises the spectre of discharge. Hence, the Debtors address such herein.

13

his allegations, the Trustee wrongfully accuses Dollmans "ha[ving] a motive to conceal." The Dollmans deny the Trustee's insinuations and allegations.

Under the higher standards of §727(a)(4), a debtor facing the prospect of a denial of discharge from the Bankruptcy Court will not be denied a discharge "if a false statement is due to mere mistake or inadvertence. Moreover, an honest error or mere inaccuracy is not a proper basis for denial of discharge." Id. (*citing* Gullickson v. Brown (*In re* Brown), 108 F.3d 1290, 1294-95 (10th Cir. 1997) (*citation omitted*)). Mr. Yar's failure to list any potential personal injury claim, whether due to inadvertence, an honest error or a deliberated decision may not yet be known; however, the mistakes of Mr. Yar should not be visited upon Dollmans nor should they should be punished as the Trustee demands. Id.

## CONCLUSION

**WHEREFORE,** for the foregoing reasons, the Dollmans request the Court to:

1. Grant their Motion to Extend Time to Amend Schedules under Rule 9006(b)(1), and allow them to amend their bankruptcy schedules; or

2. In the alternative, find that the personal injury claim at issue is not property of the bankruptcy estate; and

3. Find further that the doctrine of judicial estoppel does not apply.

Respectfully submitted,

Law Offices Of Deborah M. DeMack

*/s/Deborah M. DeMack*
Deborah M. DeMack
Quattro Executive Center
9400 Holly Ave., NE, Bldg. 4
Albuquerque, NM 87122
(505) 471-3302 (ph)
ddemack@trustthelaw.net
*Attorney for Debtors Steven Brian Dollman*

14

*and Darla Sue Dollman*

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically filed and served through the CM/ECF system to all parties and counsel of record on **November 21, 2017** as more fully reflected on the Master Service list.

*/s/Deborah M. DeMack*
Deborah M. DeMack