UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re: STEVEN BRIAN DOLLMAN and
DARLA SUE DOLLMAN,

No. 13-13057-j7

Debtors.

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Debtors' Motion to Extend Time to Amend Schedules Under Rule 9006(b)(1) ("Motion"). *See* Docket No. 97. The Chapter 7 Trustee, Philip J. Montoya, opposes the Motion. *See* Docket No. 100. Debtors, Darla Sue Dollman and Steven Brian Dollman (together, the Dollmans), request the Court to extend the time to amend their bankruptcy schedules, so they may schedule Ms. Dollman's personal injury claim (the "PI Claim") omitted from the Dollmans' original schedules and claim an exemption for potential recovery. The Court previously determined that the Dollmans may amend their bankruptcy schedules only if they can demonstrate that their failure to schedule the PI Claim was a result of excusable neglect consistent with Fed. R. Bankr. P. 9006(1). *See In re Dollman*, No. 13-13057-j7, 2017 WL 4404242 (Bankr. D.N.M. Sept. 29, 2017). The Court held a final evidentiary hearing on the Motion and took the matter under advisement. Deborah DeMack appeared at the final hearing on behalf of the Dollmans, and Bonnie Bassan appeared at the final hearing on behalf of the Chapter 7 Trustee. Because the Dollmans have failed to meet the "excusable neglect" standard under *Pioneer Investment Services Co. v. Brusnwick Associates Limited Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the Court will deny the Motion.

FACTS AND PROCEDURAL HISTORY

Darla Sue Dollman fell in the parking lot of a Wal-mart Stores, Inc. ("Wal-Mart") store on December 18, 2012. She tripped on an allegedly mangled shopping cart corral, causing her shopping cart to upend; as a result, a bag of firewood fell on her head. About nine months later, on September 18, 2013, the Dollmans filed a voluntary petition under Chapter 7 of the Bankruptcy Code. Joseph Yar represented the Dollmans in their bankruptcy case.

At that time, Mr. Yar was in private practice primarily representing individual consumer debtors in Chapter 7 and Chapter 13 bankruptcy cases. When preparing to file a bankruptcy case for a client, Mr. Yar's normal practice was to meet with the clients and ask about their assets. He generally used an interview worksheet with a checklist when meeting with clients regarding potential bankruptcy filings.

Mr. Yar no longer has the Dollmans' file. He does not recall the details of his representation of the Dollmans more than four years ago. He has not represented individual debtors in bankruptcy cases since he began working as an assistant attorney general for the State of New Mexico two years ago.

Regarding the Dollmans, Mr. Yar remembers that the Dollmans were concerned about discharging the medical debt that arose as a result of Ms. Dollman's injury in the Wal-Mart parking lot. Mr. Yar believes he may have referred the Dollmans to some personal injury attorneys to evaluate Ms. Dollman's potential PI Claim, but does not recall specifically whether he had any discussions with any personal injury attorneys about Ms. Dollman's potential PI Claim.

The Dollmans knew about Ms. Dollman's potential PI Claim against Wal-mart at the time they filed their Chapter 7 bankruptcy case. They disclosed the facts regarding the potential PI Claim to Mr. Yar before filing the bankruptcy.

On August 28, 2013, approximately three weeks before the filing of the Dollmans' bankruptcy petition, Ms. Dollman sent an email to Mr. Yar. *See* Exhibit A. The subject of the email is "Dollman petition." In the email, Ms. Dollman informs Mr. Yar about a meeting with a personal injury attorney regarding her potential claim, and that the attorney informed Ms. Dollman about a "$25,000 cap" on the money she would be able to receive from the lawsuit because of the bankruptcy. *Id.* In the email, Ms. Dollman identifies the following three options with respect to her bankruptcy case and her potential PI Claim: 1) "postpone the bankruptcy until I see if I can get enough money from the lawsuit to just pay off our debts;" 2) "cancel the Walmart lawsuit to reduce the amount of stress I am under;" or 3) "cancel the bankruptcy, keep whatever I get from the lawsuit and pay off my debt as it comes in." *Id.* In closing, Ms. Dollman states, "I intend to opt out of whatever I can." Ms. Dollman was concerned about a $25,000 cap on the recovery from her PI Claim if she and Mr. Dollman filed a bankruptcy petition. Her primary goal was to get the medical care she believed she needed due to the injury.

Ms. Dollman's significant medical expenses resulting from the Wal-mart parking lot incident were listed in the Dollmans' bankruptcy schedules. However, despite the Dollmans and their attorney being aware of Ms. Dollman's potential PI Claim, it was not listed as an asset on Schedule B, nor was an exemption in the PI Claim claimed on Schedule C. Mr. Yar does not know why the potential PI Claim ultimately was not listed in the Dollmans' bankruptcy schedules.

3

It was Mr. Yar's standard practice to advise his clients to list all potential claims or lawsuits in their bankruptcy schedules, though he does not recall today whether he had that specific conversation with the Dollmans four years ago. Mr. Yar can only speculate that if no potential PI Claim was listed in the Dollmans' bankruptcy schedules, it means that the Dollmans had concluded they did not want to pursue the PI Claim. At the time the Dollmans filed their bankruptcy petition, Mr. Dollman did not think Ms. Dollman's potential PI Claim "had legs." Even so, had Mr. Yar told the Dollmans to include the potential PI Claim in the bankruptcy, Mr. Dollman is certain they would have listed the claim in their schedules.

Before filing a petition and schedules to initiate a bankruptcy case, Mr. Yar typically met with his clients to go over the paperwork line by line, answer any questions the clients may have, and then have the clients sign the documents. The client meeting often took a long time. The Dollmans recalled that their client meeting with Mr. Yar before filing the petition was very brief and rather rushed. The Dollmans both testified that their pre-filing client meeting with Mr. Yar to review and sign the bankruptcy petition and schedules took no more than fifteen minutes. Ms. Dollman testified further that she and Mr. Dollman did not go through the bankruptcy paperwork with Mr. Yar line by line before signing the petition and schedules.

The Dollmans did not specifically instruct Mr. Yar not to list Ms. Dollman's potential PI Claim in the Dollmans' bankruptcy schedules. Line 21 of Schedule B calls for the disclosure of the following type of property: "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims." *See* Exhibit 1, p. 13. Neither Mr. Dollman nor Ms. Dollman understood what type of property Line 21 of Schedule B required them to list. Mr. Dollman testified that Mr. Yar did not explain to him the meaning of a contingent claim, and does not recall Mr. Yar explaining to him what an unliquidated claim is.

Ms. Dollman believes "unliquidated claims" relates to oil. The Dollmans relied on Mr. Yar to prepare their bankruptcy petition and schedules.

At the meeting of creditors, Linda Bloom, the Chapter 7 Trustee at the time, asked the Dollmans whether anyone owed them any money. The Dollmans responded, "No." Ms. Dollman understood the question to ask whether she had loaned any money to anyone. The Chapter 7 Trustee did not specifically ask whether the Dollmans had any personal injury claims or lawsuits.

The Dollmans received a discharge on December 30, 2013, and their bankruptcy case was closed on the same date. Nearly two years later, Ms. Dollman decided to pursue her potential PI Claim. On December 11, 2015, Darla Dollman filed a Complaint for Personal Injuries against Wal-Mart Stores, Inc. and Eloy Baca in the Thirteenth Judicial District Court, State of New Mexico, County of Sandoval, as Case No. D-1239-CV-2015-01812 (the "State Court Action"). *See* Exhibit 4. The State Court Action asserts personal injury claims resulting from Ms. Dollman's fall in the Wal-mart parking lot. Wal-Mart has asserted in the State Court Action that Ms. Dollman is judicially estopped from pursuing the State Court Action and lacks standing because the PI Claim was not listed in the Dollmans' bankruptcy schedules.

After learning that the PI Claim was not listed in their bankruptcy schedules, the Dollmans reopened their bankruptcy case on January 24, 2017 and filed amended schedules and an amended statement of financial affairs to include the PI Claim and claim an exemption in the PI Claim under 11 U.S.C. § 522(d)(11)(D). *See* Docket Nos. 18, 19, 20, and 23. The Chapter 7 Trustee objected to the Dollmans' claim of exemption in the PI Claim. *See* Docket Nos. 33 and 49. The Court resolved the Chapter 7 Trustee's objection to the Dollmans' claimed exemption by striking the Dollmans' amendments to Schedules B and C without prejudice to the Dollmans

5

filing a motion to extend the time to amend their schedules. *See* Docket No. 95. The Court's corresponding Memorandum Opinion entered September 29, 2017 determined that the Debtors may amend their schedules only by establishing that their failure to list the personal injury claim was the result of excusable neglect. *See* Docket No. 94. Debtors filed the Motion on October 23, 2017. *See* Docket No. 97.

DISCUSSION

The Debtors request the Court to extend the time to file amended schedules. As the Court previously determined, after a case has been closed, a debtor must obtain leave of court to amend schedules under Fed. R. Bankr. P. 1009(a)[1] consistent with the requirements of Fed. R. Bankr. P. 9006(b), even if the case is later reopened. *See Dollman*, 2017 WL 4404242 at *5. Under Fed. R. Bankr. P. 9006(b)(1), if the time to act prescribed by a rule has expired, the time to act may be enlarged "where the failure to act was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1). The party requesting enlargement of an expired deadline has the burden of establishing excusable neglect. *See In re Otero County Hospital Association, Inc.*, No. 11-13686, 2013 WL 74579, *4 (Bankr. D.N.M. Jan. 4, 2013)

The Supreme Court's decision in *Pioneer* establishes the excusable neglect standard Courts must apply under Fed. R. Bankr. P. 9006(b)(1). Under *Pioneer,* the Court conducts the following two-part inquiry to determine whether "excusable neglect" exists: first, the failure to act must be the result of "neglect;" second, the neglectful act must be "excusable." *See Otero,* 2013 WL 74579 at *5 ("Under *Pioneer,* the Court must engage in a two-part inquiry to determine whether excusable neglect exists."). "Neglect" encompasses "inadvertence, mistake,

---

[1] Rule 1009(a) provides, in relevant part:
    A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time *before the case is closed*.
Fed. R. Bankr. P. 1009(a)(emphasis added).

6

or carelessness" as well as failures caused "by intervening circumstances beyond the party's control." *Pioneer*, 507 U.S. at 388.  However, "neglect" under Fed. R. Bankr. P. 9006(b)(1) does not include deliberate, conscious failures to act. *See, e.g, In re Banco Latino International,* 310 B.R. 780, 785 (S.D. Fla. 2004) (stating that it is "well established that where a party's actions are deliberate, the party's late filing cannot constitute 'excusable neglect.'") (additional internal quotation marks and citation omitted); *In re SC Corp.*, 265 B.R. 660, 662 (Bankr. D. Conn. 2001)(finding creditor's conscious decision not to file a proof of claim "the antithesis of 'neglect.'").

      Here, the Dollmans' failure to schedule the potential PI Claim was due to mistake or inadvertence. The Dollmans clearly knew that Ms. Dollman had a potential PI Claim, but relied on their attorney to prepare their bankruptcy schedules. They did not understand that line item 21 on Schedule B required them to list potential lawsuits. When they met with their attorney to review the bankruptcy petition, schedules, and statement of financial affairs, they were rushed. They had no intent to conceal the PI Claim from their creditors, nor did they make a conscious decision to omit the PI Claim from the bankruptcy schedules deliberately. Their failure to list the PI Claim on Schedule B, therefore, constitutes "neglect" under Fed. R. Bankr. P. 9006(b)(1).

      Having determined that the Dollmans' failure to schedule the PI Claim resulted from neglect, the Court must next determine whether their neglect was excusable. Whether a party's neglect is "excusable" "is at bottom, an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395. Relevant factors include "the danger of prejudice to the [nonmoving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was

within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer*, 507 U.S. at 395 (citation omitted).

Some of the *Pioneer* factors weigh in favor of the Dollmans. There is little danger of prejudice to the Trustee if the Dollmans amend their schedules. The Trustee would evaluate the PI Claim and, if appropriate, pursue the claim for the benefit of creditors. The Dollmans had no intent to conceal their PI Claim from creditors and acted in good faith. However, notwithstanding their good faith, they waited more than three years after filing their bankruptcy petition to seek to amend their schedules to list the PI Claim, and only sought to do so after Wal-mart asserted that judicial estoppel prevents the Dollmans from asserting the PI Claim against it.

As the Supreme Court instructed in *Pioneer,* "in determining whether respondents' failure . . . was excusable, the proper focus is upon whether the neglect of respondents *and their counsel* was excusable." *Pioneer*, 507 U.S. at 397 (emphasis in original). Clients are held accountable for the acts and omissions of their counsel. *In re Mowers*, 160 B.R. 720, 725 (Bankr. N.D.N.Y. 1993) (citing *Pioneer,* 507 U.S. at 397). The Dollmans relied on their counsel to advise them in connection with their bankruptcy filing and to prepare their bankruptcy petition, schedules, and statement of financial affairs. Their prior bankruptcy counsel's neglect in failing to list the PI Claim in the Dollmans' schedules is attributable to them. An error or mistake by debtor's counsel is generally not "excusable neglect." *See United States v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004) (concluding that counsel's delay in filing notice of appeal did not constitute excusable neglect under the *Pioneer* standard, noting that the Supreme Court in *Pioneer* "said that 'inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect.'") (quoting *Pioneer,* 507 U.S. at 392); *Lowry v. McDonnell Douglas Corp.,* 211 F.3d 457, 464 (8th Cir. 2000) (stating that "garden-variety

8

attorney inattention" fails to meet the excusable neglect standard under *Pioneer*); *Mowers*, 160 B.R. at 725 ("mere attorney error or omission is insufficient to establish 'excusable neglect'. . ."); *see also Bernstein v. Poskanzer (In re Poskanzer)*, 56 B.R. 207, 208 (D.N.J. 1984) (decided before *Pioneer*) ("[U]nilateral inadvertence or mistake of counsel does not fall within the definition [of 'excusable neglect' under Bankruptcy Rule 9006(b)(1)]"). In sum, the Dollmans' failure to include the PI Claim in their bankruptcy schedules was not excusable because of the following: 1) both Mr. Yar and the Dollmans knew about the PI Claim; 2) the Dollmans waited over three years after filing the petition to seek to amend their schedules; and 3) the Dollmans sought to amend only after Wal-Mart asserted judicial estoppel in the State Court Action.

CONCLUSION

All debtors have a duty to disclose all assets on their bankruptcy schedules. *See Eastman v. Union Pacific Railroad Co.,* 493 F.3d 1151, 1159 (10th Cir. 2007)("The bankruptcy code imposes a duty upon a debtor to disclose all assets, including contingent and unliquidated claims . . . . That duty encompasses disclosure of all legal claims and causes of action, pending or potential, which a debtor might have.")(citation omitted). The Dollmans neglected to schedule the PI Claim notwithstanding that duty. Because the Dollmans cannot satisfy the excusable neglect standard under Fed. R. Bankr. P. 9006(b)(1), the Court will deny the Motion. The Court will enter a separate order consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: March 5, 2018

9

Case 13-13057-j7    Doc 117    Filed 03/05/18    Entered 03/05/18 16:41:52 Page 9 of 10

COPY TO:

Deborah May DeMack  
Law Offices of Deborah M. DeMack  
Attorney for Debtors  
9400 Holly Ave., NE, Bldg. 4  
Albuquerque, NM 87122  

Bonnie P. Bassan  
Askew & Mazel, LLC  
Attorney for Chapter 7 Trustee  
1122 Central Ave. SW, Suite 1  
Albuquerque, NM 87102  

10

Case 13-13057-j7    Doc 117    Filed 03/05/18    Entered 03/05/18 16:41:52 Page 10 of 10